IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

v.  21-CR-8-LJV

ERIK BERG,

          Defendant.

## PLEA AGREEMENT

The defendant, ERIK BERG, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.  THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and to plead guilty to a one-count Information which charges a violation of Title 18, United States Code, Section 1349 (Conspiracy to Commit Health Care Fraud), for which the maximum possible sentence is a term of imprisonment of 10 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of up to 3 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for

time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

    a. an agreement existed between the defendant and at least one other person to commit health care fraud;

    b. the defendant knew of the existence and the unlawful purpose of the agreement; and

    c. the defendant willfully joined the agreement.

## FACTUAL BASIS

4. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

    a. The insurance programs provided by Blue Cross and Blue Shield of Western New York, dba HealthNow ("BCBS"), and the prescription coverage provided by the Verizon Medical Expense Plan for New York and New England Associates and National Grid USA are "health care benefit programs," as that term is defined in Title 18, United States Code, Section 24(b).

    b. Between in or about June 2015 and in or about October 2016, in the Western District of New York and elsewhere, the defendant, ERIK BERG, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown, to execute a scheme and artifice to defraud the aforementioned health care benefit programs, and to

obtain, by means of false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of said health care benefit programs, in connection with the delivery of and payment for health care benefits and services, in violation of Title 18, United States Code, Section 1347.

c. Beginning in or around 1995, BERG worked as a pharmaceutical sales representative for various pharmaceutical companies and received training with respect to pharmaceutical sales in the United States.

d. In or about 2014, in the Western District of New York, BERG began marketing compounded medications, such as pain patches, pain creams, and scar creams.

e. In general, compounded medications are medications which are created when a licensed pharmacist, a licensed physician, or a person working under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient.

f. It was part of the conspiracy that the compounded medications marketed as part of the conspiracy were not tailored to the needs of individual patients, but were, instead, tailored to contain ingredients which carried high reimbursement rates from health insurers. The formulations of the medications were frequently modified by pharmacies and others to permit reimbursement from health insurance companies and/or to maximize reimbursement rates from health insurance companies.

g. For example, a one month supply of one of the compounded pain creams marketed by BERG carried a reimbursement rate of approximately $22,000.

h. It was part of the conspiracy that, unlike typical pharmaceutical sales representatives who market prescription drugs to physicians, BERG and others involved in the conspiracy identified patients whose health insurance covered the prescription medications, and marketed the medications directly to the patients, without regard to medical necessity. In most cases, BERG and/or others involved in the conspiracy then assisted the patients in obtaining prescriptions for the compounded medications, which were paid for by the patients' health insurance.

i. In furtherance of the conspiracy, BERG asked a friend who was a medical doctor to sign prescriptions for numerous individuals, who were not actually patients of the physician, and who never had office visits with the physician. The physician did sign those prescriptions at BERG's request.

j.  In furtherance of the conspiracy, BERG also invited other representatives to market the compounded pharmaceuticals, and trained, paid, and communicated with those representatives. BERG received payments representing a percentage of the reimbursement rate of each prescription he personally marketed which was approved and filled. BERG also received payments representing a percentage of each prescription marketed and filled by those representatives he brought into the company.

k.  In total, as a result of the above-described conspiracy, and the fraudulent conduct of the defendant, ERIK BERG, and those he brought into the scheme, the health care benefit programs provided by BCBS, the Verizon Medical Expense Plan for New York and New England Associates, and National Grid USA, paid approximately $7,816,085 for compounded prescriptions fraudulently filled, as described above, resulting in a loss of $7,352 to BCBS; $2,548,120 to the Verizon Medical Expense Plan for New York and New England Associates; and $5,260,613 to National Grid USA.

### III. SENTENCING GUIDELINES

5. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6. The government and the defendant agree that Guidelines §§ 2X1.1(a) and 2B1.1(a)(2) apply to the offense of conviction and provide for a base offense level of 6.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

7. The government and the defendant agree that the following specific offense characteristic does apply:

   a.  § 2B1.1(b)(1)(J): the total loss (including relevant conduct) was in excess of $3,500,000 (namely, approximately $7,816,085) and thus there is an 18 offense level increase.

## U.S.S.G. CHAPTER 3 ADJUSTMENTS

8. The government maintains that the following specific offense characteristic does apply:

    a. the 2 level increase pursuant to Guidelines § 3B1.1(c) (aggravating role in offense).

The defendant specifically reserves the right at the time of sentencing to argue to the Court that this increase does not apply.

## ADJUSTED OFFENSE LEVEL

9. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is either **26** (if the Court finds that Guidelines § 3B1.1(c) does apply) or **24** (if the Court finds that Guidelines § 3B1.1(c) does not apply).

## ACCEPTANCE OF RESPONSIBILITY

10. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility), and further agrees to move the Court to apply the additional 1 level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of either **23** (if the Court finds that Guidelines § 3B1.1(c) does apply) or **21** (if the Court finds that Guidelines § 3B1.1(c) does not apply).

## CRIMINAL HISTORY CATEGORY

11. It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

12. (a) It is the understanding of the government and the defendant that if the Court determines that Guidelines § 3B1.1(c) does apply, with a total offense level of **23** and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 46 to 57 months, a fine of $20,000 to $200,000, and a period of supervised release of 1 to 3 years.

(b) It is the understanding of the government and the defendant that if the Court determines that Guidelines §3B1.1(c) does not apply, with a total offense level of **21** and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 37 to 46 months, a fine of $15,000 to $150,000, and a period of supervised release of 1 to 3 years.

(c) Notwithstanding the above, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

13. The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

14. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV. STATUTE OF LIMITATIONS

15. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense, which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V. REMOVAL

16. The defendant represents that he is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI. GOVERNMENT RIGHTS AND RESERVATIONS

17. The defendant understands that the government has reserved the right to:

    a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

    b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

    c. advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment;

    d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

    e. oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

## VII. RESTITUTION AND FINANCIAL PENALTY PROVISIONS

18. The defendant understands, and the parties agree, that the Court must require restitution in the amount of $7,816,085 ($7,352 to BCBS; $2,548,120 to the Verizon Medical Expense Plan for New York and New England Associates; and $5,260,613 to National Grid USA) as part of the sentence pursuant to Sentencing Guidelines § 5E1.1 and Title 18, United States Code, Section 3663A. The defendant understands that the defendant will not be entitled to withdraw the plea of guilty based upon any restitution amount ordered by the Court.

19. The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or

defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

20. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

21. The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and will be (i) subject to immediate enforcement as provide for in Title 18, United States Code, Section 3613, and (ii) submitted to the Treasury Offset Program (TOP) so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect any periodic payment schedule set by the Court.

22. The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

23. The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

## VIII. APPEAL RIGHTS

24. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 12(a), above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section VII of this agreement.

25. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

26. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 12(b), above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## IX. TOTAL AGREEMENT AND AFFIRMATIONS

27. This plea agreement represents the total agreement between the defendant, ERIK BERG, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

TRINI E. ROSS
United States Attorney
Western District of New York

BY: _____
CHARLES M. KRULY
Assistant United States Attorney

Dated: November 18, 2021

I have read this agreement, which consists of pages 1 through 13. I have had a full opportunity to discuss this agreement with my attorney, TIMOTHY HOOVER, ESQ. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
ERIK BERG,
Defendant

Dated: November 18, 2021

_____
TIMOTHY HOOVER, ESQ. 11/18/21
Attorney for the Defendant

Dated: November 18, 2021